IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JACQUELYN H.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:17-CV-158 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Jacquelyn H. ("Jacquelyn") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Jacquelyn alleges that the ALJ failed to adequately address her limitations with concentration, persistence or pace and failed to provide sufficient reasons for discounting her credibility. I conclude that the ALJ failed to properly account for Jacquelyn's limitations with social functioning. Accordingly, I **RECOMMEND GRANTING in part** Jacquelyn's Motion for Summary Judgment (Dkt. No. 15), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 17), and **REMANDING** this matter to the Commissioner for additional consideration.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Jacqueline failed to demonstrate that she was disabled under

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the Court of Appeals remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJs opinion leaves the court to guess at how he reached his conclusions regarding Jacquelyn's RFC.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

2

**CLAIM HISTORY**

Jacquelyn filed for SSI on June 21, 2012, claiming that her disability began that same day. Administrative Record, hereinafter "R." 168.  The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 64–88.  On September 2, 2015, ALJ Thomas Erwin held a hearing to consider Jacquelyn's disability claim. R. 35–63. Jacquelyn was represented by an attorney at the hearing, which included testimony from Jacquelyn and vocational expert Asheley Wells. Id.

On October 15, 2015, the ALJ entered his decision analyzing Jacquelyn's claim under the familiar five-step process,[3] and denying Jacquelyn's claim for benefits. R. 17–28. The ALJ found that Jacquelyn suffered from the severe impairments of depression, post-traumatic stress disorder; anxiety, obesity and history of hernia repair. R. 19. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 19–21.  The ALJ further found that Jacquelyn had the residual functional capacity ("RFC") to perform light work, except that she requires work with no exposure to hazards, and retains the capacity to perform simple, routine and unskilled work tasks with no interaction with the general public, and no more than occasional interaction with supervisors and co-workers. R. 21.  The ALJ determined that Jacquelyn is unable to perform her past relevant work of cafeteria counter person, but that she could work at jobs that exist in significant numbers in the national economy, such as office

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

helper, garment folder, and night cleaner. R. 28. Thus, the ALJ concluded that she was not disabled.

Jacquelyn requested that the Appeals Council review the ALJ's decision. On February 14, 2017, the Appeals Council denied Jacquelyn's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

### Mental Impairments

Jacquelyn asserts that the mental limitations set forth in the RFC of performing simple, routine and unskilled work tasks with no interaction with the general public, and no more than occasional interaction with supervisors and co-workers do not adequately account for her moderate limitations with concentration, persistence and pace and social functioning.  Pl. Br. Summ. J. at 11–17.  Jacquelyn asserts that "[t]he ALJ's decision is devoid of a logical bridge between his findings and the evidence of record."  Pl. Br. Summ. J. at 15. See Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). Jacquelyn further argues that the ALJ failed to include her moderate limitations in concentration, persistence, or pace and social functioning in the hypothetical to the vocational expert. Id. at 14.  I agree that the ALJ's decision does not adequately explain how the RFC accommodates Jacquelyn's moderate impairment with social functioning, and thus, should be remanded to the Commissioner for further consideration.

Jacquelyn last worked as a cafeteria counter attendant at K&W Cafeteria from April 2010 to August 2012.  Jacquelyn was fired after an incident involving a work injury, when she refused to stay at work after being treated for the injury and was fired shortly thereafter. R. 40–41. Jacquelyn lives alone with her 11 year old son and has a history of depression, anxiety and post-

traumatic disorder, largely resulting from sexual abuse as a child. Jacquelyn began receiving psychotherapy from Patricia Marlow, a social worker in December 2012. R. 286. Jacquelyn also received counseling and medication prescribed by nurse practitioner, Tamara Baldwin, beginning in December 2012. R. 288. During her first visit with Ms. Baldwin, Jacquelyn reported spending time with her son, at work and crying. Id. She reported depression and anxiety that increased with the death of her brother in October 2012, nightmares, avoidance, flashbacks, hyperarousel, and hallucinations. Id. Jacquelyn also reported daily panic attacks when out of the house. Upon exam, Jacquelyn had depressed mood, appropriate affect, normal speech, intact thought process, anhedonia, but normal concentration. Id. Ms. Baldwin noted that Jacquelyn was able to participate in the interview and was able to concentrate and stay focused in the encounter. R. 289. Ms. Baldwin assessed post-traumatic stress disorder, and prescribed medication. Id.

Jacquelyn followed up with Ms. Baldwin in January, February and April 2013, and reported continuing anxiety and depression. R. 280, 284, 309, 311. In February, Jacquelyn reported doing "well," her depression "improving," no panic attacks and sleeping well. R. 280. In April 2013, Jacquelyn reported having problems with her son's father, and being off her medications for two weeks because she felt like they were not working. R. 311. Jacquelyn reported worsening anxiety due to stressors of custody issues, minimal depression, but panic attacks several times per week. Id. Upon examination, Jacquelyn was oriented, able to concentrate and stay focused, with intact memory, linear thought process, pressured speech, and irritable affect. Id. Ms. Baldwin adjusted Jacquelyn's medications and advised her to follow up in two weeks. R. 312. Two weeks later, Jacquelyn reported doing well without complaints, with no additional panic attacks. R. 309. Jacquelyn believed she had the right combination of medicines. Id.

In June 2013, Jacquelyn had a consultative psychological examination with Marvin A. Gardner, Jr., Ph.D. R. 294–300. Jacquelyn reported, "[i]t is hard for me to be around men, especially a lot of them. I have been sexually molested and raped a lot in my life." R. 295. Jacquelyn also reported that even some females make her nervous and she has panic attacks. Id. Jacquelyn stated that she was filling out an application for a sales position at Kohl's clothing store while in Dr. Gardner's waiting room. She also stated that with regard to supervisors, "I try to do what I am told," and with regard to co-workers, "I try to stay to myself." R. 296. She further stated, "I can't take a job very long if I get men flustering me." Id. During her mental status exam, Jacquelyn denied anhedonia, and reported some difficulty sleeping, okay energy level, and "pretty good" concentration. R. 297. Jacquelyn reported that her depression is better with medication. She also reported anxiety of being attacked by men and women, and panic attacks outside the home. Id.

Dr. Gardner found that Jacquelyn's immediate recall was within normal limits, her recent memory was mildly impaired, but her long-term memory, fund of general information, insight, judgment and abstract thinking were all within normal limits. Dr. Gardner determined that Jacquelyn "is likely to have no work-related impairments of concentration, persistence, or pace when attempting simple and repetitive tasks." R. 298. He found that Jacquelyn is able to perform work activities without special or additional supervision, but that she would have frequent interruptions of a normal workday in any job in which she had continuous exposure to males. R. 299. He also found that Jacquelyn reported a history of adequate social interaction with former supervisors, coworkers and with the general public and is capable of interacting with the general public in a situation where she is not directly exposed to males who are separated from her with regard to bodily contact. She should not work with male supervisors, and would

6

be best suited to work in a job where her coworkers were females and where she worked under female supervision. Dr. Gardner determined that Jacquelyn is capable of dealing with the usual stresses encountered in competitive work while remaining compliant with her psychiatric medication. Id.

In June 2013, state agency psychologist Jo McClain, Psy. D. reviewed Jacquelyn's records and determined that she had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. R. 69. Specifically, Dr. McClain found that Jacquelyn had moderately limited ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. Dr. McClain stated that most of Jacquelyn's problems come from interactions with men, and that she would be able to maintain socially appropriate behavior and get along with coworkers, but would be limited in her interactions with male workers and the general public. R. 72.

Jacquelyn continued to follow up with Ms. Baldwin in June and October 2013. R. 305, 307. She reported continuing panic attacks and worsening anxiety and depression, but had been off her medications recently after losing Medicaid. Id.

On December 27, 2013, state agency psychologist Kim Zweifler, Ph.D., reviewed Jacquelyn's records on reconsideration and determined that Jacquelyn had no understanding and memory limitations; moderately limited ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; moderately limited ability to work in coordination with or in proximity to others without being distracted by them; and moderately limited ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace. R. 85. Dr. Zweifler

7

determined that Jacquelyn was markedly impaired in her ability to interact appropriately with the general public and moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers. R. 86. Dr. Zweifler explained that most of Jacquelyn's problems come from interactions with men; that she would be able to maintain socially appropriate behavior and get along with coworkers, but would be limited in her interactions with male workers and the general public. R. 86.

Jacquelyn went to the emergency room on January 1, 2014, complaining of hallucinations and recent suicidal thoughts. R. 355. She was transferred to Blue Ridge Behavioral Healthcare, and was discharged the next day with medication and instructions to see her doctor. R. 322. Jacquelyn followed up with Ms. Baldwin on January 31, 2014, and reported seeing bugs that are not there, severe depression and anxiety. R. 534. On mental status examination, Jacquelyn was oriented, able to concentrate and stay focused, had intact memory, linear thought process, irritable affect, depressed and agitated mood, impaired impulse control, and sleep disturbance. Ms. Baldwin adjusted Jacquelyn's medications. R. 535.

Jacquelyn continued to see Ms. Baldwin in February, March, May, August, and November 2014. R. 511, 514, 522, 525, 531. She continued to complain of depression, mood swings, trouble sleeping, and hallucinations. In May 2014, Jacquelyn reported feeling "spacey" or "out of it sometimes," and having difficulty focusing on reading, but she was able to concentrate and stay focused during the appointment. R. 525–26. By November 2014, Jacquelyn reported feeling depressed most days, but sleeping well and not having hallucinations. R. 513. Jacquelyn followed up with Ms. Baldwin in February 2014 and reported still having mood swings with irritability triggered by "loud people and crowds." R. 508.

On August 27, 2015, Jacquelyn had an initial psychiatric assessment and reported that her mood has remained stable on her current medication regimen. She reported getting irritated easily and getting into verbal altercations with people. She also reported feelings of sadness, fatigue, lack of motivation, racing thoughts and auditory hallucinations. Upon mental examination, Jacquelyn had an anxious mood, irritable affect, linear thought process, and intact insight, judgment and cognition. R. 538–39.

Based on the above evidence, the ALJ determined that Jacquelyn had mild restriction with activities of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration, persistence and pace. R. 21. With regard to social functioning the ALJ stated,

> The claimant indicated she could go out alone if no men were around, and did not like to follow instruction dispensed by men, because she assumed trickery would ensue. However, she also indicated no significant problems when performing normal daily activities. She also indicated a history of being fired form [sic] a job, after she suffered a burn after returning from the emergency room. The claimant was refused but decidedly left and was let go.

R. 21. With regard to concentration, persistence and pace, the ALJ noted, "The claimant cited problems with concentration, sustaining attention, completing tasks, adaptation, handling stress, and following directions. However, she also indicated performing a variety of normal daily and highly functional activities." Id.

In step four of his analysis, the ALJ reviewed Jacquelyn's testimony, the medical evidence and the opinion evidence in detail. R. 22–26. The ALJ noted that Jacquelyn did not stop working due to her mental conditions, and that she sought unemployment benefits after leaving her last job, which are "dispensed under the premise that the respective individual continues the search for employment consistently." R. 22. The ALJ noted that Jacquelyn

9

acknowledged performing a variety of regular daily activities, including caring for her son, preparing meals, cleaning, going outside, driving, going to doctor appointments, shopping, managing her finances and reading. R. 23.  The ALJ noted that Jacquelyn's drug screens reflect that she was not always taking her medications as prescribed, which tends to diminish her allegations regarding the severity of her symptoms. R. 23.

The ALJ reviewed the opinion of Dr. Gardner in detail and gave it weight, finding that his objective consultative examination findings and those in Jacquelyn's periodic mental health examinations support the indication that she retains the ability to engage in competitive, gainful work. R. 25.  However, the ALJ gave Dr. Gardner's finding that Jacquelyn would be best suited to work with female coworkers and supervisors reduced weight, noting that Jacquelyn has a history of working around men and did not leave her last job for that reason. R. 25.

The ALJ noted that the state agency physicians found moderate limitations in social functioning and concentration, persistence or pace. The ALJ gave the state agency opinions weight, finding them supported by objective clinical findings. R. 26.   The ALJ did not mention or discuss the state agency physicians' statements with regard to Jacquelyn's difficulty working with or around men.

During the administrative hearing, the ALJ presented a hypothetical question to the vocational expert of an individual who should not work with male supervisors and would be best suited to work in a job where coworkers were female and she was under female supervision. R. 60.  The vocational expert testified that such an accommodation does not allow for competitive employment. Id.  The vocational expert identified jobs that do not require close physical proximity to others "for the most part." R. 60. The ALJ determined that Jacquelyn was capable of performing simple, routine, unskilled work tasks with no interaction with the general

public and no more than occasional interaction with supervisors and co-workers. R. 21. The ALJ summarized his findings, stating:

> [T]he medical evidence is not supportive of disability based upon the clinical findings and the totality of the evidence. The above residual functional capacity is supported by some of the claimant's own subjective allegations, the relatively benign objective findings both prior to and after the alleged onset date, the conservative degree of treatment the claimant has received, and the record as a whole which does not exhibit the types of medical treatment one would expect for a totally disabled individual.

R. 26.

Jacquelyn argues that the RFC set forth by the ALJ failed to properly account for her moderate limitations with concentration, persistence and pace and social functioning and does not satisfy the assessment required by SSR 96-8P. SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878 at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150 at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972 at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

With regard to concentration, persistence and pace, I find that the ALJ's decision adequately explains why a restriction of simple, routine, and unskilled work properly accommodates Jacquelyn's moderate limitation with concentration, persistence and pace. In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion, and ensure that the hypothetical presented to the vocational expert includes all of the limitations set forth in the RFC.

Here, substantial evidence supports the ALJ's decision that despite Jacquelyn's limitations in concentration, persistence, or pace, she was capable of performing simple, routine, unskilled tasks. The ALJ considered Jacquelyn's testimony that she has difficulty concentrating, sustaining attention and completing tasks, but also noted that Jacquelyn acknowledged performing a variety of regular, and highly functional daily activities. R. 21, 23. Jacquelyn's mental status exams routinely reflect normal concentration and persistence. R. 289, 305–313, 508. Further, Dr. Gardner found that Jacquelyn was likely to have no work related impairments of concentration, persistence or pace when performing simple and repetitive tasks. R. 298. Likewise, Dr. McClain found that Jacquelyn had no sustained concentration and persistence limitations, and Dr. Zweifler determined that Jacquelyn was not significantly limited in her ability to carry out detailed instructions or maintain attention and concentration for extended periods. R. 71, 85. While Dr. Zweifler found that Jacquelyn was moderately limited in her ability to perform activities within a schedule and perform at a consistent pace, she nevertheless determined that Jacquelyn could meet the basic mental demands of competitive work on a sustained basis. R. 85–86. The ALJ gave the opinions of Drs. Gardner, McClain and Zweifler weight, and limited Jacqueline to simple, routine and unskilled work tasks. R. 21, 25, 26.

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at * 7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence and pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace

satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks).

The ALJ's decision-making process with regard to Jacqueline's social functioning accommodations is not as clear. The record consistently reflects, both in Jacqueline's treatment notes and the physician opinions, that Jacqueline has difficulty working with and around men. Indeed, Dr. Gardner stated,

> The claimant's PTSD secondary to repeated and extensive sexual molestations during her formative years and beyond with associated panic attacks are triggered by working in close proximity to males such as she experienced as a cafeteria worker. She would have frequent interruptions of a normal workday in any job in which she had such continuous exposure…. She is capable of interacting with the general public in a situation where she is not directly exposed to males who are separated from her with regard to bodily contact. She should not work with male supervisors. She would be best suited to work in a job where her coworkers were females and where she worked under female supervision.

R. 299. Likewise, both Drs. McClain and Zweifler found that most of Jacqueline's problems come from interactions with men, and she has difficulty working with both men and women in close quarters. Drs. McClain and Zweifler both stated, "[Jacqueline] would be limited in her interactions with male workers and general public." R. 72, 86.

The ALJ gave "reduced weight" to the portion of Dr. Gardner's opinion pertaining to working around men, noting that Jacqueline "has a history of working around men, and did not leave her last job due to mental health reasons." R. 25. However, Jacqueline testified at the administrative hearing that she was uncomfortable at work because of the need to work in close proximity to men. R. 45. Dr. Gardner's opinion also reflects Jacqueline's statement that "[n]ear

14

the end of my last 2-year job, I couldn't handle it anymore. I had a male manager who would linger around behind me. I worked at K and W and we were all cramped in a small space behind the serving counter, even some females make me nervous." R. 295. Likewise, in her application for benefits, Jacqueline wrote, "I have had problems being in public places for a very long time. I have never really been able to work a job for too long because of my fear of men. I do not like when men look at me and I have serious issues with being around random men or even family. I have been molested by my father, beaten by my brother, beaten and raped repeatedly by my ex who I witness [sic] get murdered. Cheated on and abused by men, and harassed at work by male co-workers but I would not report it for fear of losing my job." R. 208.

The ALJ did not discuss Dr. McClain and Zweifler's findings with regard to Jacqueline's difficulty working with men. The ALJ simply stated, "the undersigned gives weight to the State agency psychological consultants' opinions, given the supporting objective clinical findings in the following discussion of medical evidence." R. 26.

The ALJ accommodated Jacqueline's social functioning difficulty by including a limitation in the RFC of "no interaction with the general public, and no more than occasional interaction with supervisors and co-workers." However, the ALJ's decision lacks explanation as to how this accommodation accounts for Jacqueline's undisputed difficulty working around or being supervised by men.

The Fourth Circuit recently reiterated in Monroe v. Colvin, that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. Monroe, 826 F.3d 176, 189 (4th Cir. 2016). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348,

15

2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Here, the ALJ did not discuss the state agency physician's findings with regard to Jacqueline's difficulty working around men, and provided no explanation for how his RFC accounted for those findings. The ALJ acknowledged Dr. Gardner's findings that Jacqueline would have difficulty working with men, but found them to be unsupported on the basis that Jacqueline worked with men previously and was fired from her job for reasons unrelated to her mental health issues. R. 20, 23, 25. The ALJ provided no other reasoning to support his decision to disregard Jacqueline's testimony about her difficulty working around men, her consistent statements to providers in her treatment records with regard to her discomfort being around men, her problems with post-traumatic stress disorder and panic attacks, and the findings of both the consultative and reviewing physicians that Jacqueline has a moderate to marked impairment with social functioning and particularly faced difficulty working with men. As noted above, Jacqueline testified that although she was fired from her previous job for a different reason, she was uncomfortable at work because of the need to work in close proximity to men and women, and that her discomfort with men prevented her from seeking out additional work. The ALJ did not discuss this testimony or provide a detailed analysis to support his conclusion that Jacqueline is capable of work that involves occasional interaction with male supervisors and co-workers. I find that the ALJ's opinion lacks the "logical bridge" necessary to explain how the ALJ's

limitations accounted for Jacqueline's credible mental limitations. The ALJ's lack of analysis in this case frustrates meaningful review and therefore requires remand for further consideration.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend **GRANTING in part** Jacqueline's Motion for Summary Judgment, **DENYING** the Commissioner's Motion for Summary Judgment, and **REMANDING** this matter this matter for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

    Enter: August 9, 2018

    *Robert S. Ballou*

    Robert S. Ballou
    United States Magistrate Judge